Good morning, Your Honors, and good morning to my colleagues. May it please the Court, my name is William Palmer, and I'm representing the Plaintiffs' Appellants in this matter and in the Consolidated Appeal to Plaintiffs and Appellees. I'd like to reserve ten minutes of my time to respond to the Comptroller's statements and any questions that you might have. The abusive practices under state unclaimed property laws are being invalidated across the country. In Ohio, the Supreme Court reversed a key case relayed relied on Excuse me, Counsel, can I bring your attention back to California where we have a very difficult issue here? As plaintiffs, you all have had, this is an ongoing series of cases, of course, dealing with an important constitutional issue. We have two cases, I'll call them Taylor 1 and more recently Turn a Cliff, where our court has found that your primary argument has no validity. Is that a fair statement? No, Your Honor. I disagree with that statement. We could speak up just a smidge more. Yes, Your Honor. I disagree with that statement. Okay. Why is that wrong? Why don't Taylor 1 and Turn a Cliff deal with it? I realize there are interest issues and so on, but the primary focus, why don't those cases deal one way or another with your claim? Your Honor, in the Turn a Cliff case, the plaintiffs in that case did not raise the constitutional arguments that we've raised from the inception of this case. In fact, on appeal, they tried to resuscitate those arguments just as you saw. You're talking about the takings clause? Yes, Your Honor. Okay. And the Ninth Circuit found properly that they had not raised those. Secondly, in that Turn a Cliff case, the Turn a Cliff plaintiff did receive interest under the unclaimed property laws, and the Turn a Cliff plaintiff actually conceded in the lower court and said, yes, these laws apply to us. We were lost and we were properly, our property was properly taken under these laws. And so the district court, Judge Ilston, then applied the interest rate in effect, and the Turn a Cliff plaintiff received that interest. Just help me with this, because what you're saying is a little different than I read the cases, and I'm hoping you're going to clarify this for me. As I look at it, with Taylor 1, our court concluded that the controller held the property as an, in quotes, custodial trust. So by definition, if it's holding someone else's property as a custodial trust, there can't be a taking because it still belongs to them. Is that a fair inference? Yes, it is, Your Honor. Okay. So let's go to Turn a Cliff. Turn a Cliff says that the property was abandoned. In effect, there's no interest in it anymore. Putting aside for a moment whether that's accurate or not, if it's truly abandoned, how can something that is abandoned be taken on a Fifth Amendment analysis? That was their argument in that Turn a Cliff case. Our argument from the inception of this case is that our property was seized, that it was seized without notice. Again, what I'm trying to wrestle with, as you know, we're a three-judge panel, not a non-bunk panel. We have to, to the best we can, follow what our court has said previously. And perhaps I'm going to be asking the Comptroller how you reconcile these two theories. But the reality is either way, abandonment or custodial trust, I don't see how you get a takings claim out of that. How do you get a takings claim? Thank you for the opportunity to explain. In the Taylor 1 case, you'll recall they used the analogy of the abandoned automobile. And the court in that case said, well, your property has been taken into custodial custody, and you'll get your car back just the way you would if it were towed away. Right. What we found out in the subsequent Taylor 2 and Taylor 3 decisions is that that's not how the state operated. They sold the property immediately within 30 days, so you never got your car back. What you got was a check from the state of California that said car on it. And in this case, when we're talking about just compensation, we've established a takings. When we're talking about just compensation, we're saying, I don't want the check that you happened to arbitrarily sell my car for, and I want my car, plus I want the contents in the trunk, which you threw in the, you know, like the interest that follows the car. In the Turnicliffe case, my colleagues in that case, frankly, that's candidly, that's a situation where bad argument makes bad law. They thought of arguments after they went up on appeal, and they tried to resuscitate them, and they failed to distinguish key holdings, and they lost. But notwithstanding the better lawyering that you're providing, you are nonetheless bound by what they did in terms of our case law, are you not? To the extent that I distinguish it and I show the court why it doesn't apply, I'm not bound by that case. And the reason it doesn't apply is, as I mentioned, they argued that the unclaimed property law applied to them, and they received interest. And they tried to raise the constitutional arguments that I've raised since the very beginning of this case on appeal, and the court rejected them. Now I'm in front of you, and I'm saying on the controller's website right now, if you were to go look at it, second paragraph under unclaimed property, it says we took 80% of this property without any notice. And I represent the 80% who are saying we want just compensation for our property, and we want the interest, constructive or actual, that follows with that property, like the shadow follows the body, like the branches grow on the tree, all of the analogies that you've heard since before the United States Supreme Court. How is this different from a reverse, an inverse condemnation action? Well, in a reverse condemnation action, Your Honor, the government is presumably acting lawfully, and it's following the laws, and it's going in and taking property for a public use. I'm talking about a reverse condemnation. You're talking about a conventional limited domain case, right? Correct, Your Honor. I'm talking about the reverse condemnation where you come and say, the government has taken my property. I want to be paid for it. Yes. It's very similar. Okay. Isn't there a Ninth Circuit authority that you cannot bring a, the Eleventh Amendment bars you from bringing that kind of action in federal court? We grappled with the Eleventh Amendment in detail, or at length, in Taylor 1. We addressed Papasan and all the other cases. And what distinguishes what this case from those cases is I have a private trust, a private custodial trust in which property has been seized and sold. The State makes no bones about it. They will tell you that it's the whole purpose of this set of laws is to take property and return it to the rightful owners. Yes. My point is, why isn't your remedy to go to State court and ask for compensation in State court under the 7-Up Pete Venture case? Your Honor, in the first four decisions in this court, we argued that very point. We argued that this is a standard Fifth Amendment takings case, that this property was seized unlawfully. We argued all the binding authority of the Ninth Circuit in those other cases, that there is this pool of money that's been set aside for these individuals that was seized by the government. It will never be the property of the government. It was seized outside the Constitution by actors, State actors, who were knowingly violating the State's mandate. Yeah, I understand your claim. My question is, why isn't this under 7-Up Pete Venture barred by the Eleventh Amendment in Federal court requiring that you go to State court to pursue this? And I think I've answered your question to the best of my ability, Your Honor, which is – Well, Taylor spoke to getting back what was seized. Yes. What about the claim for interest? How does that not run afoul of the Eleventh Amendment? The claim for interest, Your Honor, is the constructive interest that accrued on the property. That is the money that the State saved by using these individuals' private property. Well, I understand what the claim is, but I don't see Taylor as speaking directly to the question of whether that claim can be pursued in Federal court. Taylor appears to say that you can claim to get the property back, but what you might have gotten from the property, what you might have earned on the property, what the State might have benefited by holding onto the property, that's something different than the property itself. I understand the legal claim for it, but I'm not sure I understand how it is the Eleventh Amendment doesn't bar that legal claim for interest from the Federal courts. What's your authority for pursuing the claim for interest in Federal court? Well, my argument for pursuing the interest in Federal court would – I would start with Webb's Fabulous Pharmacies Supreme Court ruling and this Court's Ninth Circuit rulings and the 277,000 case and the 133,000 case and the Schneider case and the other Ninth Circuit cases that I've cited. In each of those cases, private citizens came into court. They had had their properties seized by Federal or States, and they asked for their property back plus the interest, either actual or constructive, that it accrued on that interest. In each case, the courts, the Ninth Circuit held that that is – that is part and parcel of the property. It is the property, and these citizens have a right under Ex Parte Young, under the Lee Malone standard, and the other Eleventh Circuit cases cited in Taylor I, to ask for their private property back from the government. And that's what we're doing today. And that – those claims are not barred by the Eleventh Amendment. Breyer. Between Taylor I and Taylor III, the Schieff statute was amended, was it not? Correct, Your Honor. And is it your view that – and I assume in light of your reference to the current website, I assume that it's your view that the amended statute is still constitutionally defective? Yes, it is. It's – it's terrible. It's not constitutional, and I can run through the reasons. That's because of the notice issue or what? Yes. Facially and in reality, they do not provide notice. In fact, for the last week, the website's been – hasn't been up. It's only on Wednesday. Exactly. The constitutional notice they required under Jones v. Flowers and, you know, the seminal case, Mullane v. Hanover Bank, was the most efficacious notice possible under the circumstances. Here, they are sending out direct mail notice, one letter to an address that they already know is stale. And then they don't do publication notice. They just do block ads that say, we hold money. And then they rely, instead of publication, on a searchable website. Now, I – number one, a searchable website requires the recipient of the notice to know that he or she might have property at a website and then go out and search that website. So – and then secondly, you have what's called the digital divide. You have the practical aspects of a website. It discriminates against the elderly, people without means, people without education, people who don't speak English as a primary language. All of those people who do not have access to the Internet will never get that notice. Now, at least with publication notice, which the Supreme Court has never been  Is it your position that there's nothing in the record that shows that the government has ever published general notice about the existence of the website or a way that you can get information about a sheet of property? The website is – it just contains a general notice of website. Now, all the other – I mean, in a newspaper of general circulation and compliance, does the record show, from your perspective, that there has never been, in the relevant time framework, a publication by the state comptroller's office that would comply with a general notice statute? No. Up until 1989, Your Honor, we published notice in the standard form, standard constitutional form. It was in all the major newspapers. It was an insert. It had the A through K, K through M, and I attached – actually attached it and incorporated it into the record so that somebody – and it was an event in the state. When that came out, it created coffee talk and it resonated. People went to their back fences and said, did you check your – did you see if you had any lost property? That all ceased in 1989, and I put in the record, the actual documents, that as of 1989, they were two to three years behind publishing that – doing the standard publication notice. And they just stopped because it was cheaper for them not to do it. Had they continued to do that, would that have satisfied the constitutional burden with respect to the elderly, people who speak only one foreign language and the like? Yes. It would have been standard publication notice that's recognized as constitutional under Millane. But I would add, too, Your Honor, that they also went under the first prong, the direct mail notice. Not only were they sending letters to addresses that they know are stale, but it's kind of a cynical form of government where we're taxing people. We know where these nine million people are and we're taxing them. But when it comes to handing back their property, we can't reconcile the two accounts and give them their money back. They're all lost and unknown. That's point number one. Point number two, they restricted under the direct mail notice that they will only check the individual's correct address if they get a Social Security number. In this case, Mr. Tucker is a citizen of England, never has had a Social Security number. Mr. Dr. Von Jetus is a citizen of Greece. He's never had a Social Security number. They operate under different systems. So they're never under this system. And in the Taylor 1 case, Mr. Taylor was a British citizen as well. So fundamentally, even though the State of California changed their laws, those individuals will get no better notice than they got before the change of the law. And your takings claim, I gather, is only valid because there's inadequate notice, or do you think there's more to it than that? I think, Your Honor, that I think there's more to it than that. I think that they hired these auditors, and I put copies of their contracts in the back of the brief so you could see them, commissioned them. There's no laws. There's nothing in these statutes, and you can look at them backwards and allow the State of California to hire people like these people here and give them 11 to 18 percent of somebody's private property just for going out and grabbing it and selling it. Talking about our law clerks? These men. Yes. I'm using them as an example. But you can see the dilemma. Also, none of these people are trained. They go into a safety deposit box. They drill it out. They could have the Hope Diamond, which they auctioned off on eBay, and there's actual cases in the record. They auctioned off the Hope Diamond for a dollar, you know, the bargain hunter on eBay. No notice would be provided because that falls below $50, so that person would get no notice. I gave actual examples, actual testimony where they shred the documents. Again, these auditors don't even know what they're looking at. They could have a letter from Abraham Lincoln, and it would go in the shredder because it has no value, or it could be your life insurance policy, your testamentary instruments, and these are actual cases, the recognition that you got from President Truman for your Congressional Medal of Honor that they took that gets shredded because it has no value. These are all actual. This is the level of harm that these citizens incurred. You've got about three minutes left if you want to reserve or use it. Okay, I'd like to reserve that, please. Thank you. Thank you, Mr. Palmer. Good morning. Good morning. Robin Johansen on behalf of the State Comptroller and the other defendants. I feel as though we're back to Taylor III, Your Honors, talking about the notice argument. That question was resolved in favor of the State's notice practices in Taylor III, so that anything after the passage of SB 86, which instituted those new practices in 2007, has been held by this Court to be constitutionally adequate notice. Counsel, you heard what I asked him about Turnercliffe and Taylor. These are two fundamentally different approaches to the issue before us. Do you view Taylor I and Turnercliffe as being inconsistent? Your Honor, I think the problem that we have is this question of what happens when the State holds property in custodial achete. Right. And the Taylor I Court, without really having any briefing on it, looked at the statute and said this amounts to a trust, and that because the owner can always get her property back, there is no taking. And that's correct. There is no taking. The owner can I understand your point on that, but what I'm wrestling with here is we've got one case that says it's custodial trust, and another one says that it's abandoned. Those are mutually inconsistent, are they not? No. They're not, Your Honor. Okay. Tell me why. Because abandoned property, it's a temporal kind of distinction. I can abandon property, but if I come back and someone is willing to give it back to me, and I prove that it was my property, then that person gives it back to me. And that's what state law provides. It is abandoned in the sense that the owner is not available to claim it. The holder has not heard from the owner and does not know where the owner is. But that would have also been true in Taylor I, right? Exactly. So, again, this is ‑‑ I'm not sure you really answered my question here. What I'm wrestling with is do we have to call an en banc court to resolve this issue, because we can't override our three-judge panels. How do you reconcile the concept that a sheeted property is held in a custodial trust versus one where there is an abandonment, where there is no claim whatsoever? It's just gone. You follow the statute. Nobody's there. It's just gone. Like, for example, a tenant in a lease. There's a regular abandonment provision. If you give notice to the tenant and they've left a bunch of furniture in there and you sell it, they don't have any more right. It's just gone. How do you reconcile custodial trust versus abandonment? I don't think that the court in Turnicliffe was using abandonment in the sense of permanent repudiation of ownership. The court in Turnicliffe, remember, was dealing with a plaintiff who did make a claim and who did come forward to claim the property. So that person said, I, my. So why then, why did they use the term abandonment in the sense, it seems, if they're dealing with a plaintiff that is still claiming an interest and they say that it's abandoned, well, then it really isn't abandoned, in a sense, because they still are looking for that property. Then you get back to the trust idea. And is that your point, that even though they used the term abandonment, it really was a custodial trust? Is that your position? Yes. What California and every other state in the nation has now is what amounts to a custodial system for personal property. And what happens with that is there is a presumption of abandonment that the Supreme Court has recognized repeatedly allows a state to take possession of the property, hold it in custody, and use it for the general good. That's the Connecticut Mutual case at Standard Oil. So during that period, while the state is holding the property, it has the right to use the property for the general good, which means that it doesn't have to pay someone for that right, because the person has not taken care of his or her property, has not contacted the holder, has not for some reason kept in touch with that property. And you have a right in that. You get into this tricky issue from my perspective. If you hold something in trust, you can't use it for your own purposes. I mean, that would be illegal. If you're a bank officer and you have someone's property held in trust, you can't go to the racetrack and play games and then come back and replace it. That would be illegal. So if something is really a trust, don't you get into the problem that your opposing counsel raises that you've got the Abraham Lincoln letter, the congratulatory letter from Truman. You've got to return the property because it is a trust. Whereas if you're dealing with a basically fungible asset, money, if you have a true abandonment then it doesn't really matter because cash is cash is cash is cash. How do you reconcile those two? Well, first, Your Honor, after Taylor won, two California courts have held that this is not a trust. And that's the Morris v. Chung. I'm sorry. Morris, by its definition, by its reasoning, had to have held it was not a trust because Morris says no interest is due on unclaimed property in California. So the State court overruled the Ninth Circuit's decision? Is that what you're telling me? The other case, Your Honor, was an unpublished decision called Capoletta, both of which are cited in our brief. Now, Your Honor, as far as the State court overruling the Ninth Circuit on an issue of State law, yes. It's a constitutional issue, right? We do have jurisdiction, don't we? You certainly do, Your Honor. It's a question of whether or not a trust is formed, which is a matter of State law. And for purposes of this Court's analysis, which I would remind the Court that in Taylor won, we were up on a motion to dismiss. The question of whether this was a trust was not even briefed. And the Court looked at the language of the statute and said that creates a trust. There are all different kinds of trusts, Your Honor. And, in effect, when you look back at Taylor won, the other thing that the Court said was the money that is in the abandoned property account in the State treasury is held in trust, and to the extent it remains there, it's held in trust. So it's even more narrow than that. The money does not remain there. From the controller's perspective, the language in Taylor won was mandated by the fact that it was a 12B1 and you had to assume the facts were correct as presented. Is that correct? Well, yes. And, of course, the Taylor won analysis about whether a trust existed was done simply by looking at the law. So it wasn't a question at the State law. That State law has since been interpreted by State court to say no trust. Okay. So let's see where we are now. You have, from your perspective, at least two State courts, either courts of appeal or a Supreme Court. Courts of appeal. Okay. So courts of appeal have said that these are not trusts. What did they say they are? They are, it is a program that holds the property in custody for the owner in perpetuity. There's no statute of limitations. And that allows the State to take title to the property subject to a valid claim. So this is a new form of holding property, I gather. It's not a trust. It's not an abandonment. It's a, what should we call it? These have been around for a very long time, Your Honor. Well, I understand that. But I'm just trying to understand, as an old property lawyer, I'm trying to understand what new kind of property this is. You know, I think in some ways it might be, if we're really going back to, you know, old-time common law, it's not a State entail, I can assure you that. No, we're not going to go back that far. It's a little bit like a bailor and bailee in the sense that the State is holding the property, but it's not holding it in trust. It's a unique property form, Your Honor, in that it does, of course, go back all the way to, you know. Okay. So from the controller's perspective, it's not a trust based upon these two State cases, and you say we're bound by the State construction of what it is. Correct. And Turnicliffe says it's abandoned, but you say it's not really abandoned because that there's a full abandonment and a partial abandonment. And which one is this? Well, Your Honor, I think what we have here are situations where property has become detached from its owner, in effect. The holder doesn't know where the owner is. That is one of the criteria. Not by the act of the owner. Well, that's not necessarily the case, is it? I mean, the whole point of Taylor is, and the State doesn't appear to dispute the fact that it didn't follow its own statutory requirements, let alone due process, for some substantial period of time. So arguing that the property is detached from the owner is detached from a particular perspective. I mean, Turnicliffe by its terms explicitly did not consider the due process violation. Isn't that correct? First, Your Honor, the State did follow its own statutory requirements, and that business about the in-lieu ad was because the legislature put language into the Budget Act that forbade the controller from spending money for publication. So the controller was bound by that language. Well, in other words, the legislature said you can't spend money that's necessary to comply with the statute. Does that mean the State did comply with the statute? Or did it mean it's fair to comply because the legislature left it no choice? That means the State, the legislature, superseded the statute for that particular year. So the legislature decided in its wisdom that no notice is required, so it becomes purely a due process problem, not a statutory problem. And the question about whether that notice by the State was required in addition to the notice that the statute required that the holder give before transfer was what was at issue in Taylor 2. And the Ninth Circuit held that in Taylor 2, the State did have to give pretransfer notice. This was new. No other State that we know of really gave pretransfer notice. And so now California is unique in that sense, that we give pretransfer notice. But California was also uniquely aggressive, it appears, in reaching out and grabbing property that the State's claim was at least questionable. Now, that has never, ever been established in any of these cases. Because we're dealing with motions to dismiss, so we take the complaints as they sit. Well, this is the first time that we have gotten up to this Court on anything other than a motion to dismiss. And here we have a motion for partial summary judgment. And the plaintiffs have not established, and the district court expressly found, that they had not established that the controller was taking property outside the scope of the unclaimed property law. Suppose they had. We're talking about interest here, so I want to get back to interest. Suppose they had taken the property outside of law. Would they be able to get a judgment in Federal court for interest on the property taken? Your Honor, no. Again, we're up against the Eleventh Amendment. And the Eleventh Amendment in this case means that the cases on which the plaintiffs have relied are inapposite. Those were not Eleventh Amendment cases at all. When we look at a situation like this one, where the plaintiffs, remember, all but one of these plaintiffs received interest. And the reason that the one plaintiff didn't receive interest was because she settled separately with the holder. The only other claim to interest that these plaintiffs have is one of the plaintiffs was not paid interest on his dividends. But all of them fall within the Turn a Cliff ruling that the amount of interest that they received is sufficient. So at the very beginning, we have some real standing problems here. But if the Court were to assume that the people whose property is sheeted to the State after the State changed our notice and after Taylor III, then, you know, those people have clearly gotten constitutional notice. So then the issue is, what are we looking at? We're looking at people whose property is sheeted to the State. I don't want to divert you, but Taylor III is explicit in saying it's dealing with it in a preliminary injunction context. It doesn't make a definitive determination. Now, I don't think this case in front of us today will either, but I don't believe that that – is there anything that I'm wrong in my understanding of Taylor III? Taylor III held that it's facially – that the statute is facially constitutional. And Taylor III says we're confined by our limited standard of review and is not a definitive adjudication to the constitutionality of the new law and administrative procedure. And that day is yet to come, as I understand it. That's right. It's a facial validity ruling. And, you know, again, we have, you know, partial summary judgment here. The question is, what do those particular plaintiffs, if they're owed anything, get after Turnacliff? They've been paid – those who have been paid interest get nothing because the Turnacliff case is binding on them. Those who – Ms. Seaver, I think, has a real problem because the State could not have given her notice anyway. A cashier's check does not come with an address for the recipient. So it was going to be very difficult for the State to have given her any notice. And as for Mr. Tucker's dividends, you know, I'm just not sure why that wasn't paid. But what we have, Your Honor, I think is an Eleventh Amendment problem because it's retrospective relief to compensate people for a, quote, lack of notice that occurred in the pre – for property that is sheeted before 2007. And that's distinctly retrospective. That's the – The Eleventh Amendment bars the action in Federal court, right? Correct, Your Honor. Could they go to State court and pursue this if they wanted to? Sure. Yes. Of course. That it's – there is a State, you know, sovereign immunity statute, Section 1566, I think it is, or 1541. But that would not control in a 1983 action, which can be brought in State court. So, yes, there is a remedy. It's available. And the fact that – And Taylor 1 appears to say that the Eleventh Amendment doesn't bar something. What is it you understand, Taylor 1? I'm glad you asked that, Your Honor, because that's very, very important at this point on the issue of, quote, restitution. Taylor 1 makes very clear, quoting from Edelman v. Jordan, that a retroactive award of monetary relief as a form of equitable restitution is in practical effect indistinguishable in many aspects from an award of damages against the State. That's Taylor 1, 402 F3rd at 935. So what Taylor 1 looked at was whether these plaintiffs – and, again, the problem in Taylor 1 was it wasn't clear from the complaint whether the State was refusing to give them back their money, which, of course, we were happy to give them back their money. So the State – the Taylor 1 court said that the State – that the plaintiffs can seek the return of their property and the sales proceeds from that achieved property. That's what Taylor 1 said, again, at 432. So does that mean the line gets drawn at a claim for interest or a substitute for interest? That is, you can claim what was taken or if it was sold, the cash that was obtained because of the sale. Anything beyond that, including interest, in your view, is barred in this court by the – or in Federal court by the Eleventh Amendment? Yes, in Federal court. And, again, that's leader – it's particularly the case because in this case there was no interest actually earned. So the court would be looking at what's called constructive interest. And if you look at the leader case out of the Federal circuit, that says, you know, you can't go after that. It doesn't exist. So when I posed that question to counsel for plaintiffs, he reeled off cases. I recall Webb was one of them. $277,000 was one of them. Why don't those stand for the proposition that the interest or interest substitute is claimable despite the Eleventh Amendment in Federal court? Because they weren't Eleventh Amendment cases, Your Honor. They didn't have anything to do with the Eleventh Amendment. I would like to reserve one or two minutes, since we are appellees, on the interest case, if I may. Well, we'll play it that by ear. Thank you very much. All right. Thank you, Your Honor. Quickly, I understand I have three minutes, so I'll try to hit each of the points we just heard. In response to the trust issue, apparently the Comptroller has been in a constant state of denial on that point since – for the last 20 years because in the State of the Union, it's been a constant state of denial. I'm not sure what the difference that makes. I mean, it may be a trust. It may be something else. I'm not sure what it matters if the Eleventh Amendment says you can't get a judgment, a money judgment in Federal court against the State. Well, when it's private funds being held in trust, I think an individual, Your Honor, is entitled to get his or her property back from the State of the Union. Unless there's immunity. That applies. Except we're dealing with the ex parte young exception where this is somebody's actual property and they're entitled to get it back from the government. It's a property right protected by the Fifth Amendment, applied to the states under the Fourteenth Amendment. And Taylor doesn't say that – I guess Taylor 1 doesn't say that interest is tantamount to a judgment, an order requiring payment of interest is tantamount to a judgment, the portion that Ms. Manson read? Quickly, Your Honor, I think that the interest is a property right that follows a corpus, it's got to be returned, okay? Well, it's a property right, but that doesn't mean it's an Eleventh Amendment property right. I mean, our problem is the question of – I understand the argument with regard to property rights. I heard the cases you cited, I went back and flipped through and reminded myself what those were, and I think what the State says is correct. Those aren't cases that deal directly with the Eleventh Amendment. Now, there's at least one sovereign immunity discussion, and maybe that's the closest reference we've got. But I'm not sure how the Eleventh Amendment doesn't bar any claim other than whatever was taken. And you're not asking here for what was taken. You're asking for something more than that. No, Your Honor. I'm asking for my client's property back from the State of California. An interest is a property right guaranteed under the Fifth Amendment under the case itself. But, counsel, I'm not sure you're listening to what Judge Clifton indicated here. Aren't you really faced with the fact that you can sue in Federal court under an Eleventh Amendment situation, get the property, the specific property back, but any interest or imputed interest on that runs into the Eleventh Amendment bar. Isn't that correct? No, I disagree with that. Because you're saying, you're talking about the tree and the shadow and that sort of thing. Well, the other thing, too, Your Honor, is, and this is another point, we talked about the abandonment issue, turn a cliff and so forth. My client's property was not abandoned. Okay? We put in the declarations. They are holding their stock certificates. Right. Their property. So you go back to the trust concept. You think that Taylor won. Well, let me ask you this. Counsel for the Comptroller referred to the two State Court of Appeal cases. Do you believe that those are controlling insofar as how these, well, that it's not held in a trust? Well, there's been a little reality that's been inserted into this argument since Taylor won. When my colleague stood before you in Taylor won and in the Seaver case, she was adamant that the facts were sharply in dispute. And then we got a Federal injunction in Taylor too, and voila, all the facts were true. And the first panel of the four panels that have now heard this noted in a footnote 22 that they weren't going to follow this Fong and Harris decision, and the Morris decision, which would bar my clients from any remedy in state court, relies on those two decisions. And if you read Fong and Harris, which I argued, they don't make any sense. I want a very one-minute here. Which of the four panels do you like the best? He hopes this one, you know. Judges, to be candid, we're all having a chuckle here. But those doors swing pretty heavy for my clients out there. And we're going into year nine of this. This is sixth, seventh appeal here. I'm hearing an endless sound loop of arguments that were rejected. And if the first panel was sitting here, and you're welcome to listen to the audio of the second panel, they'd be furious because we're in an endless sound loop. Yeah, you're out of time. So do you want to take 30 seconds to wrap up? Thirty seconds. Presumption of abandonment. The Supreme Court has tempered that. They've always said it requires the constitutional protections. That's what we discussed in Taylor 2, Mullane and Jones, the notice that my clients didn't receive. The standing issue, none of my clients received interest. And I briefed that. And some of them have never received their property back. And, frankly, I don't know how they ever get their property back because the state just won't give it to them. Seaver, arbitrary and capricious action. That's some of the language. And there's been a couple of new cases. I cited the SOG case, and then the district court in Kentucky overturned their statutes as well. Eleventh Amendment, as I said, interest is a property right. We're here asking for our property back from the state of California from this corpus of funds that were seized illegally. Thank you. Thank you, Mr. Baumgartner. Ms. Hanson, I think we're going to call it quits here. Thank you very much. We'll stand and recess now for three minutes. Ladies and gentlemen, our spectators in particular, we're going to hear the final case. That case was filed under seal, so we need to close the courtroom to hear that case. For those of you who want to come back and visit with us later, the case argued under seal is going to take about 20 minutes or so. So if you want to look around the building and have a cup of coffee or something, feel free. Thank you.
judges: Silverman, Clifton, Smith M.